# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES,<br><br>              Plaintiff,<br><br>        v.<br><br>LESLIE D'SEAN HARRIS, II,<br><br>              Defendant. | Case No. 3:24-cr-00031-SLG |

## ORDER ON MOTION TO SUPPRESS

Before the Court at Docket 30 is Defendant Leslie D'Sean Harris, II's Motion to Suppress. The Government responded in opposition at Docket 36. The motion was referred to the Honorable Magistrate Judge Kyle F. Reardon. Judge Reardon held an evidentiary hearing on December 5, 2024.[1] At Docket 51, Judge Reardon issued his Report and Recommendation, in which he recommended that the motion be granted. The Government moved for an additional evidentiary hearing, which the undersigned District Judge granted.[2] The second evidentiary hearing was held on March 12, 2025.[3] The Government filed objections to the Report and Recommendation at Docket 59. Harris did not file a reply.

---

[1] Docket 48; Docket 49 (Tr.).

[2] Docket 54; Docket 61.

[3] Docket 63; Docket 64 (Tr.).

The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1). That statute provides that a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge."[4] A court is to "make a de novo determination of those portions of the Magistrate Judge's report or specified proposed findings or recommendations to which objection is made."[5] The Court has reviewed the motion, related filings, hearing transcripts, and the Report and Recommendation. As explained below, the Court adopts the Report and Recommendation and grants Harris's Motion to Suppress.

## BACKGROUND

The motion seeks to suppress a firearm that was seized from the front passenger seat of Harris's vehicle following a traffic stop and pat down search of Harris by Anchorage Police Department Officer Ryan Piscoya on January 14, 2024. The Government does not object to Judge Reardon's factual findings. Therefore, the facts as recounted in the Report and Recommendation are accepted and adopted by the Court.[6] In addition to the facts found by Judge Reardon, the following additional fact—based on the Court's viewing of Officer Piscoya's body camera footage—is relevant to the Court's resolution of this motion: just over two minutes into the traffic stop, after Harris had been searching

---

[4] 28 U.S.C. § 636(b)(1).

[5] *Id.*

[6] Docket 51 at 1-7.

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 2 of 16
Case 3:24-cr-00031-SLG-KFR    Document 65    Filed 04/08/25    Page 2 of 16

for the proof of insurance and vehicle registration, Harris handed two pieces of paper to Officer Piscoya, which Officer Piscoya placed on the roof of the car.[7]

On March 19, 2024, a grand jury returned an indictment charging Harris with one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[8]

Harris moves to suppress the firearm that Officer Piscoya found in the vehicle.[9] He maintains that Officer Piscoya prolonged the traffic stop beyond what was required, that he did so in order to conduct a pat down of Harris without reasonable suspicion, and therefore the seizure of the firearm violated the Fourth Amendment.[10] In opposition, the Government contends that Officer Piscoya had reasonable suspicion to believe that Harris was armed and dangerous, and therefore the pat down search was lawful and did not unconstitutionally prolong the traffic stop.[11] The Government alternatively maintains that the inevitable discovery doctrine applies and therefore suppression of the firearm is not required even if the traffic stop was unlawfully prolonged.[12]

---

[7] Gov't Ex. 1 at 2:47-3:03 (conventionally filed with the Court).

[8] Docket 2.

[9] Docket 30.

[10] Docket 30 at 2, 7-16. *See* Docket 49 at 48-50 (Defendant's counsel at the first evidentiary hearing clarifying that "[t]he constitutional violation is the delay in the stop").

[11] Docket 36 at 8-16.

[12] Docket 36 at 16-17.

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 3 of 16

## LEGAL STANDARD

"The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."[13] "A seizure conducted without a warrant is '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'"[14] "The Government bears the burden of showing that a warrantless arrest did not violate the Fourth Amendment."[15]

## DISCUSSION

The Government objects to Judge Reardon's Report and Recommendation on four grounds: (1) the gun would have been inevitably discovered during a probation search; (2) Officer Piscoya did not perform a search of the car by looking through the window and "looking inside the car was not the fruit of the patdown"; (3) "[t]he discovery of marijuana provided probable cause for arrest and broke the causal chain"; and (4) "[i]t was reasonable to search Harris for weapons."[16]

The Court finds that the Government failed to raise the grounds underlying its second and third objections in its opposition to the Motion to Suppress; nor were

---

[13] *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citations omitted).

[14] *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (emphasis in original) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)).

[15] *United States v. Valencia*, 24 F.3d 1106, 1108 (9th Cir. 1994).

[16] Docket 59 at 3-6.

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 4 of 16
Case 3:24-cr-00031-SLG-KFR    Document 65    Filed 04/08/25    Page 4 of 16

those grounds raised at the initial evidentiary hearing.[17] In its opposition to the motion, the Government argued only that the pat down was supported by reasonable suspicion and that the inevitable discovery doctrine applied.[18]

"A district judge has discretion to consider new evidence or legal arguments made only in the objections to the magistrate judge's report."[19] The Court, in its discretion, will not consider the Government's second and third objections.[20] The Court considers the Government's objections based on reasonable suspicion and inevitable discovery in turn.

### I. Reasonable Suspicion that Harris Was Armed and Dangerous

"Under the Fourth Amendment, a seizure for a traffic stop is 'a relatively brief encounter,' 'more analogous to a so-called *Terry* stop than to a formal arrest.'"[21] "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission.'"[22] As part of that mission, an

---

[17] During its argument at the second evidentiary hearing held before the undersigned District Judge, the Government stated that "looking through the vehicle from the outside was not a search or causally connected to the challenged conduct of pat-searching the defendant." Docket 64 at 29. The Government did not otherwise present argument or evidence as to this ground, with the evidentiary hearing focusing on the Government's theory that the gun would have been inevitably discovered under a probation search. *See generally* Docket 64.

[18] *See* Docket 36 at 8-17.

[19] *United States v. Song Ja Cha*, 597 F.3d 995, 1003 n.7 (9th Cir. 2010).

[20] *Song Ja Cha*, 597 F.3d at 1003 n.7.

[21] *United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)).

[22] *Rodriguez*, 575 U.S. at 354.

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 5 of 16
Case 3:24-cr-00031-SLG-KFR    Document 65    Filed 04/08/25    Page 5 of 16

officer "may 'address the traffic violation that warranted the stop,' make 'ordinary inquiries incident to the traffic stop,' and 'attend to related safety concerns.'"[23] Ordinary inquires incident to the traffic stop "[t]ypically . . . involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."[24] "Attend[ing] to related safety concerns" includes "tak[ing] certain negligibly burdensome precautions in order to complete [the] mission safely,"[25] such as ordering the driver to exit the vehicle.[26] "[A] driver, once outside the stopped vehicle, may be patted down for weapons if the officer reasonably concludes that the driver 'might be armed and presently dangerous.'"[27] "Reasonable suspicion 'exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion.'"[28] "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than

---

[23] *Taylor*, 60 F.4th at 1239 (quoting *Rodriguez*, 575 U.S. at 354-55); *see also Rodriguez*, 575 U.S. at 356 (noting that officer safety "stems from the mission of the stop itself").

[24] *Rodriguez*, 575 U.S. at 355.

[25] *Id.* at 356.

[26] *Id.* at 356 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977) (per curiam)).

[27] *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (quoting *Mimms*, 434 U.S. at 112).

[28] *United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015) (quoting *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (emphasis in original)).

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 6 of 16
Case 3:24-cr-00031-SLG-KFR     Document 65     Filed 04/08/25     Page 6 of 16

is necessary for probable cause."[29] "The standard takes into account 'the totality of the circumstances—the whole picture.'"[30] Authority for a seizure pursuant to a traffic stop "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."[31]

The Government objects to Judge Reardon's conclusion that Officer Piscoya did not have reasonable suspicion that Harris was armed and dangerous before deciding to wait for backup to perform a pat down.[32] The Government maintains that "Officer Piscoya contacted Harris, a violent felon sitting next to an accessible loaded pistol, in the early morning," and that Harris "got out of his car unprompted, argued with Officer Piscoya, and moved erratically in the vehicle."[33] Therefore, in the Government's view, "[i]t was reasonable for Officer Piscoya to ensure that Harris was unarmed."[34]

First, Officer Piscoya did not know that Harris had two prior felony convictions or that a gun was in the front passenger seat until after he decided to perform a pat down and searched Harris. Thus, those facts cannot form the basis

---

[29] *Navarette v. California*, 572 U.S. 393, 397 (2014) (internal citation omitted) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

[30] *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

[31] *Rodriguez*, 575 U.S. at 354.

[32] Docket 59 at 6.

[33] Docket 59 at 6.

[34] Docket 59 at 6.

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 7 of 16
Case 3:24-cr-00031-SLG-KFR    Document 65    Filed 04/08/25    Page 7 of 16

of giving Officer Piscoya reasonable suspicion that Harris was armed and dangerous at the time Officer Piscoya decided to search him.

Next, while it is true that Harris exited his car at the beginning of the encounter unprompted, Judge Reardon found that Harris "provided a plausible and unchallenged explanation for why he had started to get out of the car, denied that he had any weapons, and made no movements suggesting that he might try to harm Officer Piscoya."[35] As to whether Harris "argued" with Officer Piscoya, Judge Reardon found that Harris was "largely calm and respectful" until Officer Piscoya told him that he was going to wait for backup, and that while Harris "disputed the scope of Officer Piscoya's authority at certain points . . . , [he] did not do so aggressively, threateningly, or in a manner that otherwise suggested that he posed a present danger."[36] Further, this Court's own review of the body camera footage does not show that Harris "moved erratically." Rather, the Court finds the body camera footage supports Judge Reardon's characterization of Harris's behavior. As such, the facts that the Government relies on do not demonstrate that there was reasonable suspicion that Harris was armed and dangerous.

The Government also contends that "there is no indication that [waiting to conduct the pat down] actually prolonged the stop, given Harris's inability to

---

[35] Docket 51 at 12.

[36] Docket 51 at 12-13.

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 8 of 16
Case 3:24-cr-00031-SLG-KFR    Document 65    Filed 04/08/25    Page 8 of 16

produce his insurance."[37] But this assertion is contradicted by Officer Piscoya's body camera footage, which shows that Harris handed Officer Piscoya his license and then two pieces of paper approximately two minutes into the stop, and he asked Officer Piscoya to go run his license and insurance. Officer Piscoya did not return to his vehicle to run the license and insurance; rather, he placed the papers on the roof of Harris's vehicle. The pat down search after back-up arrived did not occur until approximately seven and a half minutes into the stop.

Finally, the Government notes that "[t]he magistrate judge concluded that Officer Piscoya's suspicion was unreasonable, because Harris falsely claimed to be unarmed"; the Government contends that Officer Piscoya was not required to accept Harris's "innocent explanation for suspicious facts."[38] The Government misconstrues Judge Reardon's report. Judge Reardon did not conclude that there was no reasonable suspicion to believe that Harris was armed and dangerous solely because he denied being armed. Rather, Judge Reardon evaluated the totality of the circumstances to conclude that they did not constitute reasonable suspicion that Harris was armed and dangerous.[39]

---

[37] Docket 59 at 6.

[38] Docket 59 at 6 (first citing Docket 51 at 12 & n.74; and then quoting *District of Columbia v. Wesby*, 538 U.S. 48, 61 (2018)).

[39] *See* Docket 51 at 10-16; Docket 51 at 12 n.74 ("Officer Piscoya testified that he did not believe Defendant's denials due to Defendant's 'uncooperative nature,' the high-crime area they were in, and Defendant's unusual exit from the vehicle. As discussed below, however, these factors did not establish a reasonable suspicion that Defendant was armed and dangerous.").

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 9 of 16
Case 3:24-cr-00031-SLG-KFR   Document 65   Filed 04/08/25   Page 9 of 16

In sum, the Court rejects the Government's objections to Judge Reardon's conclusion that Officer Piscoya did not have reasonable suspicion that Harris was armed and dangerous. Therefore, the prolonged stop in pursuit of a pat down search violated the Fourth Amendment.

## II. Inevitable Discovery

"[T]he exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and, relevant here, 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'"[40] "The exclusionary rule requires a causal connection between the illegal conduct and the evidence sought to be suppressed."[41] "There are three exceptions to the exclusionary rule that implicate the causal relationship between the illegal act and discovery of the evidence: 1) the independent source doctrine; 2) the inevitable discovery doctrine; and 3) the attenuation doctrine."[42] "[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source."[43] For the inevitable discovery exception to apply, the government must "establish by a preponderance

---

[40] *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

[41] *United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004).

[42] *Frimmel Mgmt., LLC v. United States*, 897 F.3d 1045, 1053 (9th Cir. 2018).

[43] *Strieff*, 579 U.S. at 238 (citing *Nix v. Williams*, 467 U.S. 431, 443-444 (1984)).

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 10 of 16
Case 3:24-cr-00031-SLG-KFR   Document 65   Filed 04/08/25   Page 10 of 16

of the evidence that the information ultimately or inevitably would have been discovered by lawful means."[44]

The Government objects to Judge Reardon's conclusion that it has not met its burden to show that the discovery of the gun was inevitable.[45] In the Government's view, it has shown that "it is not only probable, but almost certain, that even without the challenged pat search, Officer Piscoya would have seen that Harris was on probation, attempted to call a probation officer, and succeeded in doing so; that the probation officer would have authorized a lawful search; and that the search would have located the pistol."[46]

The Government relies on evidence that it presented during the second evidentiary hearing. At that, Officer Piscoya testified that, when he runs a license during an investigatory stop, he learns whether an individual is on probation.[47] He also testified that it was standard practice for him to call probation if he sees that an individual is on probation; he could not recall a time when he could not reach a probation officer; when called, the probation officer reviews the individual's court documents and "then they will advise whether or not they need the person placed under arrest or if they require a search of the person or whatever else they need."[48]

---

[44] *Nix*, 467 U.S. at 444.

[45] Docket 59 at 3-4.

[46] Docket 59 at 3.

[47] Docket 64 at 5-6.

[48] Docket 64 at 6-7.

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 11 of 16
Case 3:24-cr-00031-SLG-KFR   Document 65   Filed 04/08/25   Page 11 of 16

The state probation officer who was on duty the night of Hariss's arrest also testified at the second evidentiary hearing.[49] The officer testified that there is a probation officer on call at all times, and that when the officer receives a call about a probationer, the officer reviews the probationer's information and conditions of release.[50] The officer testified that she "always ask[s] for searches."[51] The Government then presented the officer with a hypothetical scenario—which was based on the encounter between Officer Piscoya and Harris—and the officer testified that she would have asked for a search.[52] The Government also introduced evidence of Harris's conditions of probation, which included a condition that Harris

> shall at the direction of a probation officer, or at the direction of a law enforcement officer acting as an agent of a probation officer, submit to a warrantless and non-consensual search of [his] person, personal property including phone and electronic devices . . . , residence, vehicle, or any vehicle in which [he is] found for the presence of firearms and/or deadly weapons and illegal or controlled substances, synthetic drugs, bath salts, marijuana and drug paraphernalia.[53]

In *United States v. Garcia*, police officers saw a man run away from them while holding his waistband. They pursued him and saw him go into an apartment, where Garcia lived. Officers surrounded the apartment building and, while still

---

[49] Docket 64 at 16-28.

[50] Docket 64 at 19-20.

[51] Docket 64 at 21.

[52] Docket 64 at 24.

[53] Docket 54-5 at 3-4.

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 12 of 16

outside the apartment, they heard over the radio that the man who had run from them had been apprehended in a nearby backyard.[54] Even though they knew the man had been caught, three police officers "decided to enter the apartment without a warrant to check for injured persons and to conduct a 'protective sweep.'"[55] When they entered the apartment, they found Garcia, who was coming out of the bathroom and who told them that he had been asleep.[56] The officers handcuffed Garcia and took him outside. Once outside, the officers asked Garcia for his name and ran a records check.[57] "The check revealed that Garcia was subject to a federal supervised release condition requiring him to 'submit his person, residence, . . . or any property under his control to a search' by 'any federal, state or local law enforcement officer at any time with or without cause.'"[58] "Purporting to rely on this condition," one of the officers went back inside the apartment and conducted a full search. He found a wallet with Garcia's identification card and drugs under a sleeping pad on the floor.[59] The officer arrested Garcia; he was charged with a drug offense.[60]

---

[54] *United States v. Garcia*, 974 F.3d 1071, 1073-74 (9th Cir. 2020).

[55] *Id.* at 1074.

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.*

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 13 of 16
Case 3:24-cr-00031-SLG-KFR     Document 65     Filed 04/08/25     Page 13 of 16

Garcia moved to suppress the evidence found in the apartment. "The district court denied the motion on the basis that the officers' first entry had been permissible under the 'emergency aid' and 'protective sweep' exceptions."[61] Garcia appealed, and the Ninth Circuit reversed, finding that neither exception applied.[62]

On remand, the district court again denied the motion to suppress, finding that, pursuant to the attenuation doctrine, the officers' discovery of the suspicionless search condition was an intervening circumstance than broke the causal link between the initial unlawful entry and the discovery of the evidence.[63]

On appeal, the Ninth Circuit again reversed and held that the attenuation doctrine did not apply. The court reasoned that the government had not shown "that the discovery of the suspicionless search condition was a sufficient intervening circumstance" because the government had not presented evidence that the "decision to conduct the second search was untainted by what they saw during the initial unlawful entry."[64] The court explained that its "conclusion that Garcia's suspicionless search condition was not a sufficient intervening circumstance is consistent with our cases holding that 'officers must know about a

---

[61] *Id.*

[62] *Id.* at 1074-75.

[63] *Id.* at 1075.

[64] *Id.* at 1079.

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 14 of 16
Case 3:24-cr-00031-SLG-KFR     Document 65     Filed 04/08/25     Page 14 of 16

. . . Fourth Amendment search waiver before they conduct a search in order for the waiver to serve as justification for the search.'"[65]

> This rule reflects the significant discretion officers have in deciding whether to conduct a search pursuant to a suspicionless search condition. If they did not, there would be no reason to require knowledge of the search condition in advance, as we could assume the evidence would inevitably be discovered as soon as an officer learned of his authority to search without cause. [66]

The Court reads *Garcia* to suggest that, for the inevitable discovery exception to apply to a search pursuant to a suspicionless search condition, the officers must know about the condition at the time of the search. Here, it is undisputed that Officer Piscoya was unaware of the search condition at the time of the pat down search. Further, while the Government proffered evidence that Officer Piscoya always calls a probation officer when he learns that an individual is on probation, and the state probation officer testified that she herself always asks for a search, Harris's suspicionless search condition is still, by its plain terms, discretionary. Therefore, the discovery of the firearm pursuant to the search condition was not inevitable. The Court therefore rejects the Government's objection to Judge Reardon's conclusion that the Government "establishe[d] only that the discovery of the handgun would have been possible in this hypothetical scenario, not that the discovery was inevitable."[67]

---

[65] *Id.* at 1080.

[66] *Id.*

[67] Docket 51 at 19.

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 15 of 16
Case 3:24-cr-00031-SLG-KFR   Document 65   Filed 04/08/25   Page 15 of 16

Accordingly, the Court adopts the Report and Recommendation, and IT IS ORDERED that the Motion to Suppress at Docket 30 is **GRANTED**.

DATED this 8th day of April, 2025, at Anchorage, Alaska.

*/s/Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:24-cr-00031-SLG, *United States v. Harris*
Order on Motion to Suppress
Page 16 of 16
Case 3:24-cr-00031-SLG-KFR     Document 65     Filed 04/08/25     Page 16 of 16